**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| RUSSO, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 2:22-cv-1686-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| EASTWOOD CONSTRUCTION | ) | |
| PARTNERS, LLC, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The following matter is before the court on plaintiffs Jessica Ancrum, Sherryl Anderson, Brianna Bendik, Justin Bendik, Randy Brown, Juliann Callery, Juan Dozier, Darryl Felkel, Megan Felkel, Nicole Floyd, Candid Fortner, Peter Fortner, Kyle Grego, Ashley Hallock, Christian Hallock, Karen Halverson, Samuel Halverson, Kathleen Harvey, Arthur Hunter, Janica Hunter, John Jefferson, Sheila Jefferson, Sanchelle Johnson, Ahmad Lewis, Patricia Lewis, Lucinda Liferidge, Phillip Liferidge, Jeremy McNeer, Timothy O'Brien, Wendi O'Brien, Jason Pogar, Lindsay Pogar, Tristan Proctor, Marvin Ravenel, Mary Russo, Diane Sass, Jeremy Sheltra, Matthew Shreve, Dolores Smiley, Mae Taylor, Neverrol Thompson, John Turner, Maria Turner, Lynn Washington, and Janelle Wright's (collectively, "plaintiffs") motion to remand to state court, ECF No. 11. For the reasons set forth below, the court grants the motion to remand.

## I.   BACKGROUND

Plaintiffs brought this action against defendants alleging that either due to defective products, defective installation, or otherwise improper construction, water intrusion resulted or will result in the plaintiffs' homes. ECF No. 2-2, 3d. Amend.

1

Compl. ¶¶ 56–67.  This damage will require, or has required, plaintiffs to spend substantial sums of money to repair the properties.  Id.  The class is defined as all owners of the affected properties, with a few limited exceptions, and is composed of 388 homeowners situated in the Wynfield Forest, Oakley Pointe, Sophia Landing, Ryder's Landing, and Retreat at Beresford developments near Charleston, South Carolina.  Id. ¶¶ 45–46, 70–71.

Plaintiffs allege that defendants Eastwood Construction and Eastwood Homes (combined[1], "Eastwood") constructed and were the general contractors for the construction of the properties.  3d. Amend. Compl. ¶ 47.  Eastwood engaged subcontractors to construct the properties including defendants Exterior Contract Services ("Exterior Services"), Alpha Omega Construction Group, Inc. ("Alpha Omega"), and Southcoast Exteriors, Inc. ("Southcoast").  Id. ¶¶ 48–50.  Exterior Services, Alpha Omega, and Southcoast were engaged to install roofing.  Id.  Defendants Ciro Lopez ("Lopez") and Juan Garza Ramos ("Ramos") performed roofing work on the properties as subcontractors to Exterior Services, and John Doe Subcontractors 1–25 ("John Does") furnished labor, services, and/or materials in the construction of roofing on the properties as subcontractors and suppliers to Eastwood, Exterior Services, Southcoast, or Alpha Omega.  Id. ¶¶ 51–52.  John Does' identities were not yet known at the time of the filing of the third amended complaint.  Plaintiffs alleged three causes of action against Eastwood, Exterior Services, Alpha Omega, Southcoast, Lopez, Ramos, and John Does (collectively, the "Contractor Defendants").  Id. ¶¶ 89–114.  Plaintiffs bring this class

---

[1] Eastwood Homes merged into Eastwood Construction, LLC, now known as Eastwood Construction, effective December 31, 2010.  3d Amend. Compl. ¶ 38.

action for (1) negligence/gross negligence, (2) breach of implied warranties, and (3) violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. §§ 29-5-10, et seq., against the Contractor Defendants.  Id.  Defendant Air Vent, Inc. ("Air Vent") manufactured and sold the roof ridge vent product installed on the roofs of the properties that the plaintiffs allege is defective.  Id. ¶¶ 53–54, 56.  Plaintiffs brought three claims against Air Vent: (1) breach of implied warranties, (2) negligence, and (3) violation of SCUTPA.  Id. ¶¶ 115–50.

Plaintiffs filed this class action lawsuit on behalf of homeowners in several subdivisions in the Charleston, South Carolina area on August 26, 2020, in the Charleston County Court of Common Pleas.  ECF No. 2-1, 3d Amend. Compl., Civil Action No. 2020-CP-10-03786.  The court heard a similar matter on March 18, 2021.  Russo v. Eastwood Construction Partners, LLC, 2020-CP-10-03794, 2021 WL 1059023 (D.S.C. Mar. 18, 2021) ("Russo").  This court dismissed that case under Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), citing the federal court's right to abstain from matters duplicative of a state court proceeding.  The state court proceeding at issue is Smiley v. Exterior Contract Services, No. 2020-CP-10-03786 (Charleston Cnty. C.P. Aug. 26, 2020) ("Smiley").  On May 27, 2022, Air Vent removed Smiley, the instant action, from state court to federal court pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.  ECF No. 2.  Plaintiffs filed this motion to remand to state court on June 24, 2022.  ECF No. 11.  Eastwood responded in opposition on July 15, 2022, ECF No. 16, and Air Vent responded in opposition, ECF No. 17, on that same day.  Plaintiffs replied to those responses on July 22, 2022.  ECF No. 18.

On or around December 20, 2022, plaintiffs dismissed without prejudice all claims against Air Vent, Alpha Omega, and the named and unnamed individual contractors.  See ECF Nos. 30, 32.  Shortly thereafter, the court requested that the parties file supplemental briefs on the issue of timeliness of removal to federal court under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109–2, 119 Stat. 4–14 (codified in scattered sections of Title 28 of the United States Code), given the dismissal of Air Vent.  On January 6, 2023, plaintiffs responded in support of the motion to remand, ECF No. 36; defendant Southcoast responded in support, ECF No. 33; whereas both Eastwood and Exterior Services responded in opposition, ECF Nos. 34, 35.  On February 10, 2023, the court requested that the parties file a second supplementary brief on the discrete issue as to whether the court may still consider Air Vent's response in opposition to the motion to remand.  On February 15, 2023, plaintiffs filed a brief explaining the court could not consider those arguments, ECF No. 41, whereas Eastwood and Exterior Services filed a joint brief explaining that the court could consider those arguments, ECF Nos. 39, 40.  On February 16, 2023, the court held a hearing on the motion to remand.  ECF No. 42.  As such, the motion has been fully briefed and is now ripe for review.

## II.  STANDARD

### A.  Motion to Remand

Federal courts are of constitutionally limited jurisdiction.  "The party seeking removal bears the burden of demonstrating that removal jurisdiction is proper," In re Blackwater Security Consulting, LLC, 460 F.3d 576, 583 (4th Cir. 2006), and doubts regarding the propriety of removal are to be resolved in favor of retaining state court

jurisdiction, Baxley v. Advance Auto Parts, Inc., 2011 WL 586072 at *1 (D.S.C. Feb. 9, 2011) (citing Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)). Because removal raises significant federalism concerns, "[i]f federal jurisdiction is doubtful, a remand is necessary." Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994).

Generally, any civil action brought in a state court of which the district courts of the United States have original jurisdiction may be removed by the defendant to the district court of the United States for the district and division embracing the place where such action is pending. 28 U.S.C. § 1441(a). Original jurisdiction exists where a claim arises from federal law, see 28 U.S.C. § 1331, or where the amount in controversy exceeds the sum or value of $75,000 and the claim is between citizen of different states, see 28 U.S.C. § 1332.

Under 28 U.S.C. § 1332(a), a federal district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). There must be complete diversity, meaning "no party shares common citizenship with any party on the other side." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999) (citing Strawbridge v. Curtiss, 7 U.S. 267 (1806)). Therefore, if a case originally brought in state court could have been instituted in federal court under diversity jurisdiction, the defendant may remove the action to federal court so long as certain procedures are followed and specific conditions are met. 28 U.S.C. §§ 1441, 1446. For purposes of diversity jurisdiction, the citizenship of an artificial entity other than a corporation is coextensive with the citizenship of all of its members or partners.

Americold Realty Tr. v. Conagra Foods, Inc., 577 U.S. 378, 382 (2016); Cent. W. Va.

Energy Co., Inc. v. Mountain State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011) ("For

purposes of diversity jurisdiction, the citizenship of a limited liability company . . . is

determined by the citizenship of all of its members.").

To remove a case to federal court, "the defendant or defendants must file a 'notice

of removal[] containing a short and plain statement of grounds for removal.'"  Hartford

Fire Ins. Co. v. Harleysville Mut. Ins. Co., 736 F.3d 255, 259 (4th Cir. 2013) (quoting 28

U.S.C. § 1446(a)).

**B.  Class Action Fairness Act of 2005, 28 U.S.C. § 1453**

"Congress enacted CAFA in 2005 to expand subject matter jurisdiction in the

federal courts over 'interstate' class actions 'of national importance.'"  Dominion Energy,

Inc. v. City of Warren Police & Fire Ret. Sys., 928 F.3d 325, 329 (4th Cir. 2019) (quoting

CAFA, Pub. L. No. 190-2, § 2(b)(2), 119 Stat. 4, 5 (2005)).  To accomplish this purpose,

it amended the diversity statute, 28 U.S.C. § 1332.  Id.; see also Johnson v. Advance

Am., 549 F.3d 932, 935 (4th Cir. 2008) ("CAFA amended, among other things, the

concept of diversity jurisdiction for class actions to require only minimal diversity.").  In

general, removal pursuant to CAFA is permissible if the removing party can establish: (1)

the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest

and costs, 28 U.S.C. § 1332(d)(2); (2) any member of a class of plaintiffs is a citizen of a

state different from any defendant, § 1332(d)(2)(A); and (3) there are 100 or more

plaintiff class members, § 1332(d)(5)(B).

The Fourth Circuit has also recognized that CAFA not only "amended, among

other things, the concept of diversity jurisdiction for class actions to require only minimal

diversity," but it also "liberalized the requirements for removing class actions to federal courts." Advance Am., 549 F.3d at 935. Defendants seeking to remove a case under CAFA need only file a notice of removal containing a plausible "short and plain" statement of the facts to meet the jurisdictional requirements for removal; the notice need not contain evidentiary submissions. See Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 84 (2014). "[A]s specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." Id. at 89.

However, even where the three requirements are met the plaintiff may seek remand based on a CAFA exception. If the motion to remand relies on a CAFA-exception, the burden is on the party seeking remand to show that the exception applies. See Dominion Energy, 928 F.3d at 336; Russ v. Marriott Ownership Resorts, Inc., 2020 WL 12771380, at *2 (D.S.C. Aug. 25, 2020) (considering the local controversy exception); see also Scott v. Cricket Commc'ns, LLC, 865 F.3d 189, 196 n.6 (4th Cir. 2017) ("In CAFA-exception cases, the court has necessarily determined that jurisdiction exists and is only considering whether the exceptions impose a limit."). The plaintiff must establish the exception by a "preponderance of the evidence." Russ, 2020 WL 12771380, at *2.

### III. DISCUSSION

Air Vent removed the action to federal court based on the allegation that the amount in controversy exceeds $5,000,000, there is minimal diversity because Air Vent

7

is not a South Carolina citizen whereas all the plaintiffs are South Carolina citizens, and there are more than a hundred plaintiffs. ECF No. 2 ¶¶ 12–14. Plaintiffs now seek to remand based on two core arguments. First, plaintiffs believe removal was improper because they disagree with the characterization that the amount in controversy exceeds $5,000,000, because "Air Vent offered no evidence to show the amount in controversy meets the statutorily required amount." ECF No. 11-1 at 13. Second, plaintiffs argue that even if Air Vent properly removed the action, the local controversy exception to CAFA jurisdiction is met and remand to state court is required. See id. at 4–13.

Air Vent responds that given the facts alleged in the complaint, the amount in controversy requirement is easily met—whereby if all 388 class members seek at least $12,886.59 in roofing repairs, that alone meets the $5,000,000 threshold without considering that plaintiffs seek actual, punitive, and treble damages, as well as attorney's fees. ECF No. 17 at 7–8. Eastwood adds that since the complaint seeks treble damages (per the SCUTPA claim), each plaintiff would need only $4,295.53 in damages to be trebled to meet the amount in controversy requirement. ECF No. 16 at 19. Further, Eastwood responds that plaintiffs cannot meet the requirements for the local controversy exception because they fail to show that they seek significant relief from local defendants and there are other class actions filed in the last three years. Id. at 4–5. Air Vent explains that plaintiffs cannot satisfy the local controversy exception to CAFA for three reasons. First, they have not shown that two-thirds of the members of the class are citizens of South Carolina. ECF No. 17 at 14–17. Second, plaintiffs have not adequately demonstrated they seek "significant relief" from a local defendant or that a local defendant's conduct is a "significant basis" for their claims. Id. at 17–26. Third, the

local controversy exception is inapplicable because two other class actions have been filed asserting the same or similar allegations against one or more of the defendants in the instant case. Id. at 26–34.

In reply, plaintiffs dispute Eastwood and Air Vent's arguments regarding the local controversy exception by: (1) reiterating the evidence to support plaintiffs' South Carolina citizenship claim, (2) explaining the importance of local defendants Exterior Services and Southcoast to the complaint as well as those defendants' ability to pay a potential judgment, and (3) disputing the allegation that other class actions predate the instant case because those class actions rely on entirely different facts and claims, notwithstanding any similarities with some of the homes included in the proposed class. ECF No. 18 at 2–6.

In the time since the filing of the motion, responses in opposition, and reply, plaintiffs dismissed Air Vent from the action. ECF No. 30. The court asked the remaining parties to file two supplemental briefs on questions of law arising from the dismissal. See ECF Nos. 33–36 (addressing the timeliness of removal); 39–41 (addressing whether the court may still consider Air Vent's response in opposition). With regards to the latter issue, the court finds that even if it considers Air Vent's arguments against the motion to remand in addition to Eastwood's arguments, the outcome is the same.[2]

---

[2] Since resolving this question is immaterial to the order, the court need not decide if a dismissed party's responsive filings might be considered on a pending motion. The court's inherent authority to raise legal arguments sua sponte is not unlimited. See United States v. Burke, 504 U.S. 229, 246 (1992) (Scalia, J., concurring) ("The rule that points not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, distinguishes our adversary system of justice from the inquisitorial one."); United States v. Holness, 706

The court examines jurisdiction under CAFA and the exceptions to federal jurisdiction in turn.

## A. Subject Matter Jurisdiction under CAFA

In general, removal pursuant to CAFA is permissible if the removing party can establish: (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, 28 U.S.C. § 1332(d)(2); (2) any member of a class of plaintiffs is a citizen of a state different from any defendant, § 1332(d)(2)(A); and (3) there are 100 or more plaintiff class members, § 1332(d)(5)(B). Here, only the first prong is contested.

"While a defendant filing a notice of removal under 28 U.S.C. § 1446(a) need only allege federal jurisdiction with a short plain statement—just as federal jurisdiction is pleaded in a complaint—when removal is challenged, the removing party bears the

---

F.3d 579, 591–92 (4th Cir. 2013) ("Mindful of our role as arbiter and not advocate, we make no habit of venturing beyond the confines of the case [] to address arguments the parties have deemed unworthy of orderly mention or, perhaps, not contemplated at all."). Nevertheless, the court "possess[es] the discretion under appropriate circumstances to disregard the parties' inattention to a particular argument or issue." Holness, 706 F.3d at 592. A factor that weighs in favor of a court exercising this discretion is "when the facts have been sufficiently developed to readily permit evaluation of an alternative legal theory." See id. In Holness, the Fourth Circuit found that the voluminous record allowed the appellate court to resolve the question of the defendant's Fifth Amendment rights notwithstanding the parties' failure to raise those claims. 706 F.3d at 591–93. A similar analysis could apply in cases where a now-dismissed party has filed a brief opposing or supporting a pending motion, since the facts would be sufficiently developed in such a scenario. Holness is the closest analogy to provide the court with authority in the name of judicial economy to review Air Vent's arguments notwithstanding Air Vent's dismissal. See id. Further, it would not unduly prejudice the parties since most of Air Vent's arguments overlap with Eastwood's own arguments in its response in opposition. But, this issue—whether the court may consider the previously filed arguments of a now dismissed party on a pending motion—has not been clearly decided by the courts, and this conclusion is necessarily made by analogy rather than direct authority. The court provides this analysis to partly explain its consideration of Air Vent's arguments, but recognizes that even with such consideration, circumstances in this case weigh in favor of remand.

burden of demonstrating that removal jurisdiction is proper." <u>Ellenburg v. Spartan Motors Chassis, Inc.</u>, 519 F.3d 192, 200 (4th Cir. 2008).  However, once the jurisdictional requirements of CAFA are met, the burden shifts to the party seeking remand to establish that an exception exists.  <u>Eakins v. Pella Corp.</u>, 455 F. Supp. 2d 450, 452 (E.D.N.C. 2006) ("[T]he plaintiff bears the burden of proving that the local controversy exception warrants remand to state court.").

The court first examines when it should examine the propriety of removal, and thereafter considers plaintiffs' objections to removal—namely, whether Air Vent and Eastwood properly met the amount in controversy.

### 1. Timeliness of Removal

The question of timeliness of removal is complicated by the fact that the defendant that removed the action to federal court, Air Vent, was subsequently dismissed before the court could resolve the motion to remand.  <u>See</u> ECF Nos. 2, 11, 30.  As a consequence, the court asked the remaining parties to file supplemental briefs on the timeliness of removal and remand.  Under CAFA, there is a thirty-day deadline for removal which exists as a jurisdictional limit.  <u>See</u> 28 U.S.C. § 1446(b).  That deadline is triggered by either the complaint containing sufficient notice to trigger CAFA's jurisdiction, 28 U.S.C. § 1446(b)(1), or, if not, a defendant's receipt of a litigation document demonstrating sufficient jurisdictional facts to make the matter removable under CAFA, 28 U.S.C. § 1446(b)(3).  If neither of those triggering dates are implicated, the issue becomes whether the case can be removed based on the defendants' discovery of their own documents that demonstrate, for the first time, that CAFA jurisdiction is present.  <u>See</u> <u>Portillo v. Nat'l Freight, Inc.</u>, 169 F. Supp. 3d 585, 589 (D.N.J. 2016).

"[U]nder CAFA, a single defendant can remove a case without the consent of the other defendants." Bartels ex rel. Bartels v. Saber Healthcare Grp., LLC, 880 F.3d 668, 674 (4th Cir. 2018).

In the instant case, plaintiffs filed the complaint and subsequently amended it three times. The original complaint was filed on August 26, 2020, against Exterior Services, Southcoast, and Alpha Omega. Plaintiffs filed the first amended complaint on December 4, 2020. On March 23, 2021, plaintiffs filed the second amended complaint naming as defendants Eastwood and the named and unnamed individual contractors. On April 26, 2022, the plaintiffs amended the complaint a third time and named Air Vent. Air Vent timely removed the case to federal court on May 27, 2022. Under 28 U.S.C. § 1446(b), the defendants would have thirty days upon notice of the action, or the action's removability under CAFA, to remove to federal court pursuant to CAFA.[3] The parties do not appear to contest that the complaint and its subsequent amendments provide the respective triggering dates for the thirty-day removal period under 28 U.S.C.

---

[3] The one-year limitation applies only to standard diversity jurisdiction under 28 U.S.C. § 1332(a) and not to class actions removed under § 1332(d), which is a part of CAFA. Although exempting CAFA from the one-year limitation appears to defy § 1446(c)(1)'s text, which refers to cases brought "on the basis of jurisdiction conferred by section 1332," another section of Title 28 clarifies the issue:

> A class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(c)(1) shall not apply), without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants.

28 U.S.C. § 1453(b) (emphasis added); see also Reece v. Bank of N.Y. Mellon, 760 F.3d 771, 775–76 (8th Cir. 2014).

12

§ 1446(b)(1).[4]  The question at hand asks whether the remaining defendants may now

adopt Air Vent's motion to remove even though Air Vent is no longer a defendant, and

the remaining defendants had an opportunity to remove, and failed to do so, after the

earlier amended complaints.

Plaintiffs argue that because the remaining defendants did not timely remove, they

now lack "standing" to comment on whether the court may remand.  See ECF No. 36 at

4.  Plaintiffs do not support this assertion with clear or direct precedent, but rather focus

on the thirty-day statutory limit on removal, Eastwood's participation in the state court

action, and an allusion to the standing doctrine.  See id. at 4–5 ("Defendants waived their

right to seek the resolution of this case in federal court and lack standing to oppose

Plaintiffs' Motion for Remand.").  Southcoast filed a brief in support of remand, ECF No.

33, since it admits it qualifies as a local defendant, but nevertheless argues that the court

may hear Eastwood's arguments against the motion to remand since Eastwood is a

diverse defendant.  ECF No. 33 at 3.  In contrast, Eastwood and Exterior Services argue

that the dismissal of Air Vent did not deprive the court of jurisdiction because timeliness

is assessed on the date of removal even if the removing party is later dismissed.  ECF

Nos. 34, 35.  Furthermore, they argue that it is appropriate to allow the diverse party

---

[4] Other circuit courts have held that in CAFA actions amendments to the
complaint that add a new defendant "commence" the civil action as to the added party.
See, e.g., Braud v. Transp. Serv. Co. of Ill., 445 F.3d 801, 804 (5th Cir. 2006); Schorsch
v. Hewlett-Packard Co., 417 F.3d 748, 749 (7th Cir. 2005); Prime Care of Ne. Kan., LLC
v. Humana Ins. Co., 447 F.3d 1284, 1286 (10th Cir. 2006).  This accords with the long
history of caselaw that generally holds "a party brought into court by an amendment, and
who has, for the first time, an opportunity to make defense to the action, has a right to
treat the proceeding, as to him, as commenced by the process which brings him into
court."  United States v. Martinez, 195 U.S. 469, 473 (1904).  Consequently, each
amendment to the complaint triggers a new thirty-day removal period for those new
defendants named in the amended complaint.

Eastwood—a limited-liability corporation organized under the laws of North Carolina, 3d Amend. Compl. ¶¶ 36–37—to act as the removing party following Air Vent's dismissal even though Eastwood did not originally remove the case from state court.

"The removal statute, 28 U.S.C. § 1441(a), requires that a case 'be fit for federal adjudication at the time the removal petition is filed.'" Moffitt v. Residential Funding Co., LLC, 604 F.3d 156, 159 (4th Cir. 2010) (quoting Caterpillar Inc. v. Lewis, 519 U.S. 61, 73 (1996)).  At the time Air Vent removed the case to federal court, that removal was proper under CAFA as it was a putative class action with more than 100 class members, there was minimal diversity, and the amount in controversy exceeded $5,000,000, exclusive of interest and costs.[5]  Thus, at the time of removal, diversity of citizenship was met, and the federal court properly had subject matter jurisdiction.  Consequently, Eastwood is correct: the issue is not who is the removing party, but whether the dismissal of the party who removed the case provides a basis for remand.  ECF No. 34 at 4.

The court has identified one case in the District of South Carolina that is factually analogous and analytically on point such that it provides the clearest answer to the question of when the court must determine whether it has subject matter jurisdiction over the removed action.  See In re Blackbaud, Inc., 2021 WL 1940581 (D.S.C. May 14,

---

[5] The third amended complaint implicated the owners of 388 homes, which meets the 100 class member requirement.  ECF No. 2 ¶ 8.  Air Vent, a purported citizen of Delaware and Texas, asserted based on information and belief that all the class members are citizens of South Carolina (though it later contests that assertion under the discussion of the local controversy exception)—at a minimum, all named class members are South Carolina residents.  Id. ¶ 13.  Further, Air Vent alleged that the amount in controversy exceeds $5,000,000, exclusive of interest and costs.  Id. ¶ 12.  It is disputed whether the amount in controversy is met.  The court's discussion of the amount in controversy is below, but for the sake of the timeliness inquiry, the court finds that the evidence shows that the amount in controversy is met.  Thus, removal was proper.

2021).  In that case, the diverse defendant removed the case to federal court pursuant to

CAFA, the plaintiff thereafter dismissed the removing defendant, subsequently filed an

amended complaint naming the local defendant as the sole defendant, and filed a motion

to remand claiming the federal court lacked jurisdiction.  Id. at *1–2 (noting the plaintiff

claimed "to the extent this Court ever had jurisdiction, removing [the diverse defendant]

from the case and filing the Amended Complaint eliminated any basis for it.").  The court

held that "[s]ince jurisdiction is determined at the time of removal, the propriety of

remand depends on the pleading in place at the time of removal."  Id. at *4.  Thus, the

court relied on the original complaint operative at the time of removal, not the amended

complaint, in making its determinations regarding propriety of jurisdiction.  Id.  These

holdings are consistent with other courts' determinations that the federal court retains

jurisdiction even after the removing defendant is dismissed from the action.[6]

---

[6] Other courts faced with similar scenarios have reached the same result—that the federal court retains jurisdiction.  In Braud, the Fifth Circuit held that because the district court had jurisdiction under 28 U.S.C. § 1332 as amended by CAFA at the time of removal, the subsequent dismissal of the removing defendant did not divest the federal court of jurisdiction.  445 F.3d at 808.  Rather, that court held "that it is the 'action,' not claims against particular defendants, that is removable, so the subsequent dismissal of the removing party cannot render the entire lawsuit improperly removed."  Id.  That court grounded its decision in part on the language of CAFA itself—it plainly states that "any single defendant can remove (without the consent of other defendants) the entire class action (not merely the claims against the defendant)."  Id. (citing 28 U.S.C. § 1453(b)).  Other courts with similar facts that have considered the issue of jurisdiction pursuant to CAFA after dismissal of a removing defendant have come to comparable conclusions.  See, e.g., Cleary v. Philip Morris Inc., 656 F.3d 511, 515 (7th Cir. 2011) (holding that since the case was properly removed under CAFA, the subsequent dismissal of the removing defendant did nothing to divest the court of jurisdiction over the case); Dinkel v. Gen. Motors Corp., 400 F. Supp. 2d 289, 294 (D. Me. 2005) (same).

In fact, courts have consistently held that subsequent modifications to cases that would have prevented removal pursuant to CAFA do not deprive a federal court of jurisdiction.  See, e.g., In re Burlington N. Santa Fe Ry. Co., 606 F.3d 379, 380–81 (7th Cir. 2010) (finding that a later amendment of the complaint to eliminate the class action allegations does not deprive the federal court of a case properly removed pursuant to CAFA); Cooper

Additionally, the Fourth Circuit's broad consideration of removal jurisdiction pursuant to CAFA supports a holding that the court may retain jurisdiction over the instant case.  See, e.g., Moffitt, 604 F.3d at 159.  In general, "an initial lack of the right to removal may be cured when the final posture of the case does not wrongfully extend federal jurisdiction."  Id. (quoting Cades v. H&R Block, Inc., 43 F.3d 869, 873 (4th Cir. 1994); Am. Fire & Cas. Co. v. Finn, 341 U.S. 6, 16 (1951)).  Here, Eastwood lacked the right to remove the action in May 2022 because its removal window closed thirty-days after it was named as a party on March 23, 2021.  But, upon being named as a defendant, Air Vent timely and properly removed pursuant to CAFA—thus, removal was proper. The subsequent dismissal of Air Vent will not deprive the court of jurisdiction because there is still minimal diversity between Eastwood, a North Carolina citizen, and plaintiffs, primarily South Carolina citizens.  Cf. Braud, 445 F.3d at 808 (holding that a federal

---

v. R. J. Reynolds Tobacco Co., 586 F. Supp. 2d 1312, 1319–20 (M.D. Fla. 2008), cert. denied, No. 08–90021 (11th Cir. Oct. 28, 2008) (concluding that even in cases removed pursuant to CAFA, the later severance of the cases such that each case is tried individually does not deprive federal courts of subject-matter jurisdiction); Louisiana v. Am. Nat. Prop. Cas. Co., 746 F.3d 633, 635 (5th Cir. 2014) (same); Davis v. Homecomings Fin., 2007 WL 905939, at *2 (D. Wash. Mar. 22, 2007) (holding that even if the final amount in controversy is less than $5,000,000 that fact does not deprive the federal court of jurisdiction so long as CAFA jurisdiction was properly alleged at the time of removal); Casias v. Distrib. Mgmt. Corp., Inc., 2012 WL 4511364, at *4 (D.N.M. Sept. 26, 2012) (refusing to remand to state court upon the plaintiffs seeking to amend the class definition to eliminate minimal diversity after the case was properly removed pursuant to CAFA).  Courts have relied on CAFA's legislative history to find that sound policy reasons support a finding that subsequent events cannot "oust" the federal court's jurisdiction, saying "if subsequent events could unravel a federal court's jurisdiction, a defendant could prevail on the merits, only to have the federal court conclude that it lacks jurisdiction to enter judgment."  Homecomings Fin., 2007 WL 905939, at *2 (citing S. Rep. 109–14, at 70–71 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 66–67).  Thus, the great weight of authority from other circuit and district courts supports holding that this court retains jurisdiction over the action despite the dismissal of the removing defendant Air Vent.

16

court may nevertheless properly remand if the dismissal of the removing defendant was made for legitimate purposes, "provided, of course, that CAFA's minimal diversity requirement is not satisfied after the dismissal of the removing defendant."). It would therefore not "wrongly extend federal jurisdiction" for the court to continue to exercise jurisdiction over this case. See Moffitt, 604 F.3d at 159.

Consequently, the court examines the propriety of subject matter jurisdiction under CAFA—here, whether the amount in controversy requirement for removal was satisfied—at the time of removal.

### 2.    Amount in Controversy

In determining whether the amount in controversy exceeds the $5,000,000 jurisdictional threshold, the appropriate measure is not the amount of damages plaintiffs will ultimately recover, but rather the alleged amount in controversy. Lanier v. Norfolk S. Corp., 256 F. App'x 629, 631–32 (4th Cir. 2007) (citing Brill v. Countrywide Home Loans, Inc., 427 F.3d 446 (7th Cir. 2005)). If the removing defendant meets its burden of establishing the amount in controversy, "only a 'legal certainty' that the judgment will be less forecloses jurisdiction." Id.

"To determine whether the jurisdictional minimum is satisfied, the district court looks to the aggregated value of class members' claims." Bartnikowski v. NVR, Inc., 307 F. App'x 730, 734 (4th Cir. 2009) (citing 28 U.S.C. § 1332(d)(6)). Where plaintiffs leave damages unspecified in their complaint, the defendant has the burden to establish the jurisdictional amount by a preponderance of the evidence to remove the case to federal court under CAFA. Id. The Fourth Circuit has specified that defendants cannot reach the amount in controversy requirement through speculative assumptions but must

support their assumptions with any evidence.  Id. at 736.  "In analyzing the amount in controversy for cases removed under CAFA, treble damages, when demanded, must be included in the analysis."  Hardig v. Certainteed Corp., 2012 WL 423512, at *2 (W.D.N.C. Feb. 9, 2012) (citing cases).  The figure used in calculating amount in controversy should be the "maximum value that this action could possibly represent to each putative class member for replacement costs."  Id. (internal quotation marks omitted).  "If the plaintiff challenges removal, however, the defendant 'bears the burden of demonstrating that removal jurisdiction is proper.'"  Cricket Commc'ns, 865 F.3d at 194 (quoting Strawn v. AT&T Mobility LLC, 530 F.3d 293, 297 (4th Cir. 2008)) (emphasis in original).  "To resolve doubts regarding a defendant's asserted amount in controversy, 'both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.'"  Id. (quoting Dart Cherokee, 574 U.S. at 89).

Plaintiffs argue that Air Vent has failed to establish that the amount in controversy exceeds the statutorily required $5,000,000.  ECF No. 11-1 at 13.  Plaintiffs suggest that "Air Vent offered no evidence to show the amount in controversy meets the statutorily required amount."  Id.  Air Vent responded that "the amount in controversy is easily met, given the nature of damages alleged."  ECF No. 17 at 6.  Since plaintiffs allege that "all 388 homes suffered 'substantial and consequential' damage resulting from water intrusion, damage to wood, drywall, and other components, shingle failure, reduced useful life of the roofs, and the costs of resulting roof repairs," in addition to latent defects, Air Vent submits that the aggregate amount of damages is substantial and likely well above the $5,000,000 threshold.  See ECF No. 17 at 7 (citing 3d Amend. Compl.

¶¶ 63, 65–66).  Considering these claimed damages, Air Vent argues that the amount in controversy is met if each of the 388 homeowners is awarded just $12,886.59.  Id. at 8.  Further, Air Vent asserts that based on evidence submitted to date, the average amount of compensatory damages alone per class member would be $10,079.98—in total, $3,911,032.24.  Id.  On top of this estimate, Air Vent argues that since plaintiffs' complaint asserts entitlement to treble damages, punitive damages, and attorneys' fees under SCUTPA, the court should consider those amounts in estimating amount in controversy.  Id. at 11–12.  Finally, Air Vent concludes that once all the applicable damages are considered, plaintiffs could be seeking as much as $26,986,122.45—well above the $5,000,000 threshold required by CAFA for jurisdiction.  Id. at 13.  Eastwood similarly finds that the amount in controversy should be easily met in this case and, in its response, provides the analysis of the minimum threshold of liability for each of the class members assuming treble damages alongside an affidavit assessing damages.  ECF No. 16 at 19–20; ECF No. 16-5, Hodgin Aff.

The court finds that Air Vent and Eastwood have plausibly alleged that the amount in controversy is met in this case based on actual damages plus the possibility of treble damages, punitive damages, and attorneys' fees.  As Air Vent has explained, if each plaintiff seeks $12,886.59 in actual damages for roofing repair, in aggregate that alone is enough to meet the amount in controversy requirement without considering all other types of damages.  See ECF No. 17 at 7.  Eastwood similarly argues that CAFA's minimum amount in controversy is easily met and further explains that should treble damages be awarded, "each plaintiff would need only have $4,295.53 in damages" to reach $5,000,000 in damages.  ECF No. 16 at 19.  Importantly, Eastwood provides an

19

affidavit from Derek Hodgin, a registered roof consultant, who inspected some of the properties at issue to make a visual evaluation of the roofing at each and found that repair and replacement costs to the roofs and allegedly damaged elements are likely to exceed $4,000 per property.  ECF No. 16 at 19–20; Hodgin Aff.  Unlike in Bartnikowski, where the Fourth Circuit found the defendants' unsupported assumption of five weekly overtime hours for each class member central to their calculation of amount in controversy, Air Vent and Eastwood have based their estimates on expert opinions and submissions from plaintiffs regarding estimates for repair.  See 307 F. App'x at 737; ECF No. 16 at 21 (citing ECF Nos. 16-6–16-11, Deposition Excerpts; ECF No. 16-12, Ravenel Estimate).

Plaintiffs have not refuted these calculations in their reply, only contesting the removal in their initial motion to remand based on Air Vent's failure to provide any evidence whatsoever to show the amount in controversy—which Air Vent and Eastwood have since rectified.  See id.; ECF No. 11-1 at 13.  Consequently, the court finds satisfied the amount in controversy requirement that allows removal to federal court under CAFA.

Thus, removal pursuant to CAFA was proper and the court has jurisdiction over this action.

### B.  Local Controversy Exception

Even when a case is properly removed as an initial matter, there are several exceptions to jurisdiction under CAFA that allow remand.  The primary basis of plaintiffs' motion to remand rests on what is known as the local controversy exception.  ECF No. 11-1 (referencing 28 U.S.C. § 1332(d)(4)).  The application of the local controversy exception divests the federal court of jurisdiction, making remand to state

court mandatory.  See 28 U.S.C. § 1332(d) ("A district court shall decline to exercise

jurisdiction . . . .") (emphasis added).

It is debatable when the test for the exceptions is undertaken—at the time of

removal or after that time upon a change in circumstances if the motion to remand

remains pending.  Compare Cedar Lodge Plantation, L.L.C., v. CSHV Fairway View I,

L.L.C., 768 F.3d 425, 426–27 (5th Cir. 2014) (holding that amending the complaint after

removal to federal court to add a local defendant does not qualify the action for remand

under the local controversy exception because that determination is judged at the time of

removal); Kitchin v. Bridgeton Landfill, LLC, 3 F.4th 1089, 1098–99 (8th Cir. 2021)

(Stras, J., concurring) (evaluating the defendants' citizenship under the local-controversy

exception at the time of removal), with Benko v. Quality Loan Serv. Corp., 789 F.3d 111,

1117 (9th Cir. 2015) (holding that when the plaintiffs amended the complaint after

removal to explain the nature of the action against already named defendants for purposes

of jurisdictional analysis, the court may consider the amended complaint to determine

whether remand to state court is appropriate); Kaufman v. Allstate N.J. Ins. Co., 561 F.3d

144, 153 (3d Cir. 2009) (concluding that the local controversy exception requires

consideration of the defendants presently in the action, not restricting that determination

to the time-of-filing).

The Fourth Circuit has not considered this issue, but two district courts within the

Fourth Circuit have found that the applicability of exceptions to CAFA depends on the

pleading in place at the time of removal, not later modifications to the complaint or

parties.  See Est. of Hanna v. Agape Senior, LLC, 2015 WL 247906, at *4–6 (D.S.C. Jan.

20, 2015) (evaluating the local controversy exception based on the operative complaint at

the time of removal and not considering the subsequent dismissal of the removing defendant); <u>Blackbaud</u>, 2021 WL 1940581, at *4 (finding that at the time of removal, the operative complaint did not support remand under the local controversy or discretionary jurisdiction exceptions to CAFA). Thus, it is unclear how much weight the court should give to plaintiffs' dismissal of Air Vent, Alpha Omega, and the individual named and unnamed subcontractors in evaluating these exceptions. The court finds it unnecessary to decide this issue because the outcome is the same whether the facts are considered at the time of removal, or after the dismissal of Air Vent, Alpha Omega, and the named and unnamed subcontractors.

Another way to frame this issue is <u>what</u> evidence the court considers—must the court restrict itself to the pleadings or may it consider additional extrinsic evidence such as later affidavits and supplemental briefs? <u>See</u> <u>White v. Bastrop Energy Partners LP</u>, 2021 WL 4295320, at *9 (S.D. Tex. Sept. 21, 2021) (citing cases that explain the different extrinsic evidence considerations for the local controversy exception). In essence, there is a circuit split as to whether the court may consider materials outside of the pleadings to determine whether an exception applies versus confining its determination to the pleadings alone. <u>Compare</u> <u>Coleman v. Estes Express Lines, Inc.</u>, 631 F.3d 1010, 1016–17 (9th Cir. 2011) (restricting the court's remand consideration to the allegations in the pleadings), <u>with</u> <u>Atwood v. Peterson</u>, 936 F.3d 835, 840–41 (8th Cir. 2019) (considering relevant affidavits in addition to the complaint); <u>Evans v. Walter Indus., Inc.</u>, 449 F.3d 1159, 1167–68 (11th Cir. 2006) (same). Some courts have provided a more nuanced view that constrains the court to the timing of removal but allows the court to evaluate any extrinsic evidence that enables an accurate evaluation of

22

the exceptions to jurisdiction under CAFA at the time of removal.  See, e.g., Young v. Integrity Healthcare Cmtys., LLC, 513 F. Supp. 3d 1043, 1052 n.6 (S.D. Ill. 2021).

Other courts within the Fourth Circuit did not constrain their analysis to the arguments existing at the time of removal.  For instance, one court gave the parties additional time to file supplemental briefs on the local controversy exception and expressly considered the plaintiff's supplemental affidavit which further explained allegations in the amended complaint.  Craft v. S.C. State Plastering, LLC, 2016 WL 11608327, at *1, 3 (D.S.C. Sept. 8, 2016).  Similarly, another court gave both the plaintiffs and defendants an extension of time and opportunity to submit supplemental briefs regarding CAFA's minimal diversity and amount in controversy, as well as the application of CAFA's exceptions to jurisdiction after the motion to remand was filed. Bowen v. Houser, 2011 WL 380455, at *1 (D.S.C. 2011).  However, most courts, including the Fourth Circuit, have been silent as to when and what they considered for evaluating exceptions to jurisdiction under CAFA.  See, e.g., Quicken Loans v. Alig, 737 F.3d 960 (4th Cir. 2013); Eakins v. Pella Corp., 455 F. Supp. 2d 450 (E.D.N.C. 2006); Cook v. S.C. Pub. Serv. Auth., 2020 WL 869741 (D.S.C. Jan. 21, 2020); Priselac v. Chemours Co., 561 F. Supp. 3d 562 (E.D.N.C. 2021); Treon v. Dryvit Sys., Inc., 2009 WL 10677290 (D.S.C. Jan. 9, 2009); Mungo v. Minn. Life Ins. Co., 2011 WL 2516934 (D.S.C. June 23, 2011); Dernoshek v. FirstService Residential, Inc., 2021 WL 1060208 (M.D.N.C. Mar. 19, 2021).  The court is persuaded that it should consider extrinsic evidence, including the briefs and the supplemental briefs providing new details to support or to oppose the motion to remand, in addition to the pleadings.  See ECF Nos. 11, 16–18, 33–36, 39–41.

23

The primary basis of plaintiffs' motion to remand rests on what is known as the local controversy exception to CAFA. 28 U.S.C. § 1332(d)(4). The local controversy exception applies to removed cases:

> (A)(i) over a class action in which--
>
>> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>>
>> (II) at least 1 defendant is a defendant--
>>
>>> (aa) from whom significant relief is sought by members of the plaintiff class;
>>>
>>> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>>>
>>> (cc) who is a citizen of the State in which the action was originally filed; and
>>
>> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons;

28 U.S.C. § 1332(d)(4)(A) ("Local Controversy Exception"). Further review of CAFA's legislative history reveals that the purpose of the local controversy exception is to permit class actions with a truly local focus to remain in state court. See S. Rep. No. 109–14, at 38 (2005) (stating that a federal court should apply this exception to a case identified as "a truly local controversy—a controversy that uniquely affects a particular locality to the exclusion of all others"). Therefore, a "court's analysis for jurisdictional purposes should focus on whether the case is a truly local controversy warranting remand or whether it is an interstate class action . . . involv[ing] more people, more money, and more interstate

commerce that Congress intended to place in federal court."  <u>Alig</u>, 737 F.3d at 965

(internal quotation marks omitted).

The party seeking remand under an exception bears the burden of proving that the

exception applies.  <u>See</u> <u>Eakins</u>, 455 F. Supp. 2d at 452 (agreeing with the Fifth, Eleventh,

and Seventh Circuits that once a removing party establishes a <u>prima</u> <u>facie</u> case for

removal, the burden shifts to the plaintiff to prove that the local controversy exception

should apply); <u>Craft</u>, 2016 WL 11608327, at *2 (same).  The court examines the four

requirements for the local controversy exception, finding that the facts in the instant case

support remand to state court.

### 1.  Citizenship of the Proposed Plaintiff Class

For purposes of the local controversy exception, plaintiffs must first establish that

"greater than two-thirds of the members . . . in the aggregate are citizens of the State in

which the action was originally filed."  28 U.S.C. § 1332(d)(4)(A)(i)(I).  In considering

jurisdiction, a person is a citizen of the state in which she is domiciled.  <u>Cricket</u>

<u>Commc'ns</u>, 865 F.3d at 195.

Plaintiffs assert that the class identified in this action "consists of the owners of

single-family residential structures built by and with materials supplied by defendants, in

four subdivisions in Berkeley County and Charleston County in South Carolina."  ECF

No. 11-1 at 5 (citing 3d Amend. Compl. ¶¶ 1–54).  As such, plaintiffs argue that since

these are single-family residential structures, "the presumption should be that the vast

majority of the homeowners permanently reside at the properties and therefore are

citizens of South Carolina."  <u>Id.</u>  In support of this assertion, plaintiffs attach a chart that

summarizes the homes, the owners, and the citizenship of the owners, ECF No. 11-2, and

attach the supporting property records, ECF No. 11-3.  In those supporting records,

plaintiffs identify forty-six class members who are not citizens of South Carolina or

whose citizenship is unknown, asserting the remaining 342 class members are citizens of

South Carolina, which comes to approximately eighty-eight percent of the class

members.  See ECF No. 11-2.

Air Vent argues that plaintiffs have not met their burden to demonstrate the

citizenship of the class members.  Specifically, Air Vent contends that plaintiffs have

shown residency alone, not domicile—i.e., plaintiffs have not shown neither national

citizenship nor physical presence coupled with an intent to make the state a home.  ECF

No. 17 at 15.  Air Vent argues that the plaintiffs' attached documents that purportedly

support a finding of South Carolina citizenship—namely, the Berkeley County Unofficial

Property Card and tax records for each home that show the property was subject to the

owner-occupied tax (4%) versus the rental property tax rate (6%)—do not accurately

demonstrate residency, much less an intent to remain in South Carolina, as required to

establish domicile.  Id. at 15–17.  Eastwood did not contest that plaintiffs could show

two-thirds of class members had South Carolina citizenship.  ECF No. 16.

Plaintiffs disagree with Air Vent's characterization of their evidence and argue

that they have met the burden to establish two-thirds of the class is domiciled in South

Carolina.  ECF No. 18 at 2–4.  First, plaintiffs emphasize that the character of the class—

the owners of single-family homes—weighs in favor of a finding domicile at that home

since courts have used ownership of real property in a state as evidence of a person's

domicile in that state.  Id. at 2.  Second, the plaintiffs rely on the 2020 United States

Census to show that in the relevant population of North Charleston only 24,079 persons

of the total 790,955 persons in that area were non-United States citizens, comprising at most 3.3% of the relevant metro area population.  Id. at 2–3 (citing ECF No. 18-2). Third, plaintiffs argue that Air Vent has failed to demonstrate that other evidence exists that contradicts plaintiffs' evidence of citizenship and instead, Air Vent merely chose to critique the plaintiffs' evidence without providing any contrary evidence.  Id. at 3–4. Fourth, plaintiffs argue that Air Vent mischaracterizes plaintiffs' evidence of tax rates since the 4% tax rate for an "owner-occupied" property requires each owner to submit an application and affidavit under penalty of perjury evidencing that the property is that person's domicile.  Id. at 4 (citing S.C. Code Ann. §§ 12-43-220(c)(2)(i), (ii), & (iv)). Plaintiffs included 825 pages of property tax records in their motion to remand but have not provided the court with a summary of how many of the 388 properties receive the 4% owner-occupied tax rate, merely concluding that the number meets the minimum threshold.  See ECF No. 11-3; ECF No. 18 at 4 ("In conclusion, the number of homes owned by class members subject to the 4% tax rate is the minimum number of homeowners domiciled in South Carolina, and the number of homeowners in the class domiciled in South Carolina may exceed that number.").

To start, plaintiffs have sufficiently alleged United States citizenship.  In Craft, the court found it material that for national citizenship, the plaintiff failed to submit any evidence addressing national citizenship, whereas the defendants provided the court with the declaration of the customer service manager for the relevant region who stated that "it [was his] understanding that approximately 75% of purchasers of Sun City Hilton Head homes come from places other than South Carolina, including foreign countries."  2016 WL 11608327, at *4 (internal citation omitted).  Here, plaintiffs have provided some

27

evidence that the class members are not foreign citizens—namely, that the relevant region of South Carolina in 2020 had only 3.3% of foreign nationals, meaning statistically 96.7% of the persons in that region were United States citizens.  See ECF No. 18 at 2–3.  Consequently, the court finds that plaintiffs have adequately alleged their prospective class members are United States citizens.

Plaintiffs have, perhaps, needlessly complicated the question of South Carolina citizenship by defining the class as those property owners of the affected residences.  One clear method to avoid the question of residency versus citizenship is to limit the class to those affected citizens, not just residents of a geographic area.  See Advance Am., 549 F.3d at 937–38 (recognizing plaintiffs had "taken care" to avoid federal jurisdiction under CAFA by limiting the class to South Carolina Citizens); Simring v. GreenSky, LLC, 29 F.4th 1262, 1267 (11th Cir. 2022) ("[O]nly the class definition itself—not other portions of the complaint—can restrict the scope of a class for purposes of this first way of establishing the two-thirds requirement [for the local controversy exception].").  In cases where plaintiffs do not base citizenship on the class definition, they must provide evidence of the class members' state of residence as well as evidence showing their intent to remain in that state.  See Cricket Commc'ns, 865 F.3d at 195 ("As courts of limited jurisdiction, we are constitutionally prohibited from inferring argumentatively that a person's residence is her domicile.") (cleaned up); Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989) ("[D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there.").  The Fourth Circuit has specified that when citizenship is questioned,

> [A] court must make an individualized inquiry relying on certain factors
> such as voter registration; current residence; the location of real and

28

personal property; location of bank and brokerage accounts; membership in clubs, churches, or other associations; place of employment or business; driver's license and automobile registration; and the state to which a person pays taxes . . . . No single factor is dispositive.

Cricket Commc'ns, 865 F.3d at 195. Many of these factors are publicly available, including business and professional licensures, property ownership, property taxes, and voter registration. Id. at 196. The party seeking to establish citizenship of the proposed class does not need to make a "definitive determination of domicile" but "must provide enough facts to allow a court to determine—not speculate—that it is more likely than not that the class action belongs in federal court." Id. at 196–97.

In accordance with this requirement, courts in the District of South Carolina have held that a party seeking remand under a CAFA exception must do more than set forth residency numbers. See Craft, 2016 WL 11608327, at *4 (denying the motion to remand because plaintiff's evidence "that only 6.67% of the potential class members have a secondary residence" and "only 18.75% of the potential class members [were] assessed at the six percent tax ratio for non-owner-occupied homes" was insufficient to establish that class members were "both United States citizens and [] domiciled in South Carolina."); Bowen, 2011 WL 380455, at *8 (denying motion to remand under CAFA exception because although "Plaintiffs have provided evidence that . . . class members reside in South Carolina, [] residency is insufficient to establish domiciliary intent"); but see Cook, 2020 WL 869741, at *7 (D.S.C. Jan. 21, 2020) (remanding to state court under a CAFA exception relying on evidence of residency to create a presumption of citizenship for a class composed of electrical customers because "it is utterly implausible to belief that more than two-thirds of the electrical customers . . . are citizens of a state other than

29

South Carolina.").  However, other courts that have considered the residency-domicile

presumption have found it to fit particularly well in the CAFA exception context because

the exceptions are abstention doctrines rather than jurisdictional, which affords the courts

more leeway.  See Mason v. Lockwood, Andres & Newnam, P.C., 842 F.3d 383, 392–93

(6th Cir. 2016) (explaining that courts that have refused to apply the residency-domicile

presumption have wrongly assumed the exceptions were jurisdictional).[7]  The Fourth

Circuit has implied it was open to this line of reasoning.[8]  Cricket Commc'ns, 865 F.3d at

198 n.6.

---

[7] The court follows the lead of the many circuit courts to have considered whether
the exceptions to jurisdiction under CAFA function as jurisdictional restrictions or
abstention doctrines, and now similarly holds that the exceptions are a form of abstention.
See, e.g., Gold v. N.Y. Life Ins. Co., 730 F.3d 137, 142 (2d Cir. 2013); Mason v.
Lockwood, Andres & Newnam, P.C., 842 F.3d 383, 392 (6th Cir. 2016); Morrison v.
YTP Int'l, Inc., 649 F.3d 533, 536 (7th Cir. 2011); Graphic Commc'ns Local 1B Health
& Welfare Fund A v. CVS Caremark Corp., 636 F.3d 971, 973 (8th Cir. 2011); Adams v.
W. Marine Prods., Inc., 958 F.3d 1216, 1223 (9th Cir. 2020); Dutcher v. Matheson, 840
F.3d 1183, 1190 (10th Cir. 2016); Hunter v. City of Montgomery, 859 F.3d 1329, 1334
(11th Cir. 2017).  The distinction is relevant because some courts have held that it
changes the burden of proof for consideration of citizenship under the CAFA
exceptions—the court need not meet the typical rigorous standards for proof of
citizenship since the issue falls under an abstention doctrine rather than subject matter
jurisdiction.

[8] The Fourth Circuit has not explicitly defined whether the domicile requirements
set forth in Cricket Communications also apply to CAFA-exception cases—including
those that implicate the local controversy exception.  See 865 F.3d at 198 n.6.  Rather, the
court acknowledged that other circuits have held that for CAFA-exception cases, the
plaintiffs were able to establish a rebuttable presumption that a person's residence is his
domicile.  Id. (citing Mason, 842 F.3d at 390).  However, the Fourth Circuit noted that a
lower standard applying residency, not domicile, was only appropriate in those cases
because the CAFA-exceptions, like the local controversy exception, are not jurisdictional.
Id. (citing Mason, 842 F.3d at 392; Serrano v. 180 Connect, Inc., 478 F.2d 1018, 1023
(9th Cir. 2007)).  In other words, a party asserting the exception does not encounter
presumptions against federal jurisdiction.  Id.  It is unclear whether this footnote implies
the Fourth Circuit is open to accepting residency as a proxy for domicile in local
controversy exception cases, or was merely noting why residency as alleged in the notice
of removal was insufficient in Cricket Communications.

Initially, the court agrees with the court in <u>Cook</u> and determines that neighborhoods of single-family homes in the suburbs of Charleston are likely comprised of at least two-thirds South Carolina citizens.  <u>See Cook</u>, 2020 WL 869741, at *7.  Other circuits have held that requiring plaintiffs to show citizenship of each class member beyond a reasonable doubt "would render class actions 'totally unworkable.'"  <u>Adams</u>, 958 F.3d at 1223 (quoting <u>Preston</u>, 485 F.3d at 816).  Though a court may not rely on "sensible guesswork" in determining citizenship, the Tenth Circuit instead suggested that the CAFA exceptions should require an evidentiary standard based on "practicality and reasonableness," whereby the defendants must show that the plaintiffs' method to determine citizenship was unreasonable.  <u>Lax v. App of N.M. ED, PLLC</u>, 2022 WL 2711230, at *5 (10th Cir. July 13, 2022) (citing <u>Preston</u>, 485 F.3d at 816).  Other courts have found that a class member's residency creates a rebuttable presumption of citizenship for the purposes of establishing the home-state and local controversy exceptions to CAFA jurisdiction.  <u>See, e.g.</u>, <u>Ellis v. Montgomery Cnty.</u>, 267 F. Supp. 3d 510, 517 (E.D. Penn. 2017).  In the instant case, plaintiffs have provided the court with property-tax records, delineating those class members who claimed the owner-occupied tax, with the resulting number of South Carolina citizens reaching eighty-eight percent.  ECF No. 11-2.  In contrast, defendants have neither rebutted the presumption that residency provides citizenship under the CAFA exceptions, nor have they clearly shown that plaintiffs' methods of determining citizenship are unreasonable.

Finding that plaintiffs have met their burden on the first prong of the local controversy exception, the court turns to the second prong.

## 2. Local defendant(s) form a Significant Basis from whom plaintiffs
## seek Significant Relief

Plaintiffs must show that at least one defendant (a) is a defendant from whom members of the plaintiff class are seeking "significant relief," (b) is a defendant whose conduct "forms a significant basis" for the proposed plaintiff class's claims, and (c) is a citizen of the state in which the action originally was filed. 28 U.S.C. § 1332(d)(4)(A). The Fourth Circuit has not addressed the terms "significant relief" and "significant basis" in connection with the local controversy exception. Est. of Hanna, 2015 WL 247906, at *3; see also Craft, 2016 WL 11608327, at *5 (noting the same). Instead, courts within the Fourth Circuit have looked to the Senate Report[9] for guidance parsing these terms and have interpreted them to reveal an "intention that the [terms] 'significant relief' and 'significant basis' under the second prong [] define truly local controversies." Craft, 2016 WL 11608327, at *5 (quoting Eakins, 455 F. Supp. 2d at 452). The court first turns to the question of the defendants' citizenship and then applies the standards for significant basis and significant relief to determine whether the identified local defendants meet this requirement.

---

[9] The Senate Committee Report states in pertinent part,

[T]he Committee intends that the local defendant must be a primary focus of the plaintiffs' claims–not just a peripheral defendant. The defendant must be a target from whom significant relief is sought by the class (as opposed to just a subset of the class membership), as well as being a defendant whose alleged conduct forms significant basis for the claims asserted by the class.

S. Rep. No. 109-14 at 40 (2005).

### a. Local Defendant(s)

A corporation is deemed a citizen of any state by which it has been incorporated and a citizen of the state where it has its principal place of business.  Hertz Corp. v. Friend, 559 U.S. 77, 80 (2010) (citing 28 U.S.C. § 1332(c)(1)).  In explaining "principal place of business," the Supreme Court has found that the term refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities," most often where the corporation maintains its headquarters.  Id. at 92–93.  Plaintiffs sued eight defendants in this action[10] of which five are corporate entity defendants; two of those five, Exterior Services and Southcoast, are South Carolina citizens.  ECF No. 11-1 at 5.  According to its Articles of Incorporation, Southcoast was incorporated in South Carolina and thus is a citizen of South Carolina.  ECF No. 11-1 at 5–6 (citing 3d Am. Compl. ¶ 40).

"A limited liability company organized under the laws of a state is not a corporation . . . [but rather] is an unincorporated association, akin to a partnership for diversity purposes, whose citizenship is that of its members."  My IV Spa LLC v. Hydration Station USA Franchise Sys. LLC, 2018 WL 3867794 at *2 (D.S.C. Aug. 15, 2018) (citing Gen. Tech. Applications, Inc. v. Exro Ltd., 388 F.3d 114, 121 (4th Cir. 2004)); see also Sulka v. Hoagland, 2019 WL 4409464, * 2 (D.S.C. Sept. 16, 2019) ("It is well settled that an LLC is a citizen of every state in which any of its members are domiciled, not in the state in which it was formed.").  Exterior Services was incorporated

---

[10] Notably, plaintiffs have since dismissed Air Vent, Alpha Omega, and the known and unknown individual contractors, leaving as defendants only Eastwood, Southcoast, and Exterior Services.  See ECF Nos. 30, 31.  The court is analyzing citizenship at the time of removal, but observes that two of the three remaining defendants are South Carolina citizens.

in North Carolina, but plaintiffs assert its principal place of business is South Carolina

because the limited liability company is manager-managed with both managers listing

their business addresses and residences as South Carolina.  ECF No. 11-1 at 6.

Consequently, Exterior Services is a citizen of South Carolina.

Thus, the court finds that Southcoast and Exterior Services are both local

defendants.

### b.  Significant Relief

Next, plaintiffs have adequately shown they seek significant relief from

Southcoast and Exterior Services.

Although the Fourth Circuit has not adopted a specific test for determining when

"significant relief" is sought, the Eleventh Circuit has held that "a class seeks 'significant

relief' against a defendant when the relief sought against the defendant is a significant

portion of the entire relief sought."  Evans, 449 F.3d at 1167 (citation omitted); see also

Est. of Hanna, 2015 WL 247906, at *4 (applying Evans in the absence of guidance from

the Fourth Circuit); Craft, 2016 WL 11608327, at *5–6 (same); Priselac, 561 F. Supp. 3d

at 574 (same); Carter v. Allstate Ins. Co., 2012 WL 3637239, at *9–10 (N.D. W. Va.

Aug. 21, 2012) (same).  This analysis requires not only "an assessment of how many

members of the class were harmed by the defendant's actions, but also a comparison of

the relief sought between all of the defendants and each defendant's ability to pay a

potential judgment."  Evans, 449 F.3d at 1167 (citation omitted).  "Under CAFA, where

the complaint shows that the putative class seeks significantly more relief from an out-of-

state defendant than a local defendant, the class does not seek 'significant relief' from the

local defendant."  Priselac, 561 F. Supp. 3d at 575.  "The inquiry focuses on whether the

34

class seeks significant relief from the local defendant, not whether the class may obtain significant relief." Id. (emphasis in original).

Plaintiffs allege that since the subcontractors Southcoast and Exterior Services installed the defective roofs, they are primarily liable for those roofs' repairs and are consequently not peripheral defendants, which should meet the significant relief requirement. ECF No. 11-1 at 6, 8. Eastwood responds that "[b]ecause each house had a specific roofing subcontractor for the original construction, which would be one of the three named, it does not follow that [Exterior Services] and Southcoast would have worked on all the houses—diverse defendant Alpha Omega worked on a portion as well." ECF No. 16 at 7. In reply, plaintiffs argue that using the named plaintiffs as a representative sample of the homes at issue, all but one had a roof installed by either Southcoast or Exterior Services. ECF No. 18 at 5 (citing ECF No. 18-4). Perhaps sensing the weakness of that argument, plaintiffs explain in their supplemental filing to the court that together Exterior Services and Southcoast performed the original roofing work on 375 of the 388 homes (or ninety-six percent) and further claim that they will amend the complaint to remove from the plaintiff class those homes on which Alpha Omega provided the roofing upon the resolution of subject matter jurisdiction. ECF No. 36 at 7–8.

Apportionment of relief is relevant when considering significance of such relief. See Priselac, 561 F. Supp. 3d at 575 ("Under CAFA, where the complaint shows that the putative class seeks significantly more relief from an out-of-state defendant than a local defendant, the class does not seek 'significant relief' from the local defendant."). Plaintiffs seek actual, punitive, and treble damages against the defendants in this case,

though the complaint did not specify whether those damages are joint and several.  <u>See</u>

3d. Amend. Compl., ECF No. 2-1 at 28.  But the motion to remand implies that plaintiffs

do in fact seek joint and several relief.  <u>See</u> ECF No. 11-1 at 8 ("Plaintiffs seek the same

relief from [Southcoast and Exterior Services] as from all the other defendants.").

Importantly, plaintiffs expressly stated at the hearing that they are seeking joint and

several liability against the defendants.  In aggregate, these claims weigh in favor of

finding significant relief met.  <u>See</u> <u>Smith v. Marcus & Millichap, Inc.</u>, 991 F.3d 1145,

1160 (11th Cir. 2021) (finding a local defendant "significant" in part because "the

complaint seeks joint and several liability against both [defendants] for all damages.");

<u>Mungo v. Minn. Life Ins. Co.</u>, 2011 WL 2516934, at *4 (D.S.C. June 23, 2011) (finding a

defendant significant because plaintiff "seeks actual, statutory, and punitive damages

from [that defendant].");  <u>Est. of Hanna</u>, 2015 WL 247906, at *4 (finding a defendant

significant because the damages could have been sought from either defendant (or both)

since the complaint did not differentiate between the sums sought from one defendant

versus the other).  Additionally, the court notes that Eastwood has filed crossclaims

against Exterior Services, Southcoast, and Alpha Omega alleging negligence, breach of

contract, and equitable indemnity.  <u>Smiley</u>, No. 2020-CP-10-03786 (Charleston Cnty.

C.P. May 11, 2022).  Taken together, the court finds that greater relief is sought from the

subcontractors than the general contractor Eastwood, which weighs in favor of finding

significant relief met.

　　　　Plaintiffs' complaint delineates the causes of action between the Contractor

Defendants (<u>i.e.</u>, Eastwood, Exterior Services, Alpha Omega, and the named individual

subcontractors) and Air Vent.  <u>Id.</u> ¶¶ 89–150.  On the one hand, plaintiffs allege

negligence/gross negligence in the construction of the homes, breach of implied

warranties, and violation of SCUTPA collectively against the Contractor Defendants.  Id.

¶¶ 89–114.  Plaintiffs then brought three causes of action against Air Vent alone for

defective manufacture of the ridge vents, alleging breach of implied warranties,

negligence, and violation of SCUTPA without naming any of the Contractor Defendants.

Id. ¶¶ 115–50.  At the time of removal, it was unclear how much relief was sought from

local defendants versus foreign defendants considering the reliance on the construction

versus manufacturing claims.[11]

It is unclear how much weight the court should give, if any, to the question of

each defendant's ability to pay because courts are divided over whether such

consideration should inform the question of significant relief.  Compare Marcus &

Millichap, Inc., 991 F.3d at 1161 ("Nothing in the statute indicates that district courts

must conduct a factual inquiry into whether a defendant has the financial means to pay

the damages alleged in the complaint.  Thus, CAFA does not require the district court to

examine a defendant's ability to pay based on the unambiguous plain meaning of the

statute's text."), with Treon, 2009 WL 10677290, at *3 (finding significant relief met

even though the local defendants were individuals, not corporate entities, because

plaintiffs provided evidence from the assessor's office that the individual defendants

possessed real property in excess of $4.3 million such that those local defendants "may

have [had] sufficient assets to cover the cost of the judgment sought.").  The court agrees

---

[11] The court once again notes that all the claims against Air Vent have since been
dismissed.  ECF No. 30.  Therefore, in practical terms Plaintiffs now place no reliance on
its manufacturing claims.  The court reiterates that it is considering the circumstances in
place at the time of removal.

with <u>Marcus & Millichap</u>—using principles of statutory construction, a defendant's ability to pay is irrelevant to the question of significant relief.[12]  Nevertheless, the court engages with this analysis since another court in the District of South Carolina found such consideration to be material.  Upon review of local defendants' ability to pay, it finds that that consideration is in favor of finding significant relief.  Though Southcoast is insolvent and Exterior Services ceased doing business in 2014, both companies had insurance policies in effect at the time the homes were constructed.  <u>See</u> ECF No. 17 at 22 (emphasizing that since Southcoast has been a defunct entity since 2013 at the latest, plaintiffs have failed to show how such an entity could provide "significant relief."); ECF No. 42 (noting that at the hearing, the court heard that Exterior Services ceased doing business in 2014).  Importantly, the parties agree that both Southcoast and Exterior Services had insurance policies at the time of construction of the homes.  ECF No. 42.  Specifically, plaintiffs have provided a declaration that Southcoast was covered under an applicable umbrella insurance policy should the plaintiffs prevail, notwithstanding Southcoast's current defunct status.  ECF No. 18 at 5; ECF No. 18-5.  That insurance provides Southcoast up to $1 million in liability coverage for each occurrence, with up to $2 million in commercial general liability coverage.  ECF No. 18-5 at 2–3.  Exterior Services also had insurance coverage at the time of construction, though the court does

---

[12] The Eleventh Circuit in <u>Marcus & Millichap</u> found that "[t]he significant defendant provision in its requirement that the defendant be one 'from whom significant relief <u>is sought</u> by members of the plaintiff class.'" 991 F.3d at 1161 (quoting 28 U.S.C. § 1332(d)(4(A)(i)(II)(aa) (emphasis added)).  "That requirement does not equate to a defendant from whom significant relief <u>may be obtained</u>."  <u>Id.</u> (emphasis in original); <u>see also</u> <u>Coffey v. Freeport McMoran Copper & Gold</u>, 581 F.3d 1240, 1244–45 (10th Cir. 2009) ("The statutory language is unambiguous, and a 'defendant from whom significant relief is sought' does not mean a 'defendant from whom significant relief may be obtained.'").

38

not presently have the policy specifics.  ECF No. 42.  The court finds that plaintiffs have established by a "preponderance of the evidence" that local defendants could pay a sizable portion of the proposed damages, which weighs in favor of finding that plaintiffs seek significant relief from local defendants.  See Russ, 2020 WL 12771380, at *2.

Plaintiffs have shown that Southcoast and Exterior Services were involved in ninety-six percent of the implicated class member homes.  ECF No. 35 at 7–8.  Plaintiffs are seeking joint and several liability from the Contractor Defendants, and have demonstrated that the two local defendants have some ability to pay the requested relief through their insurance policies.  Moreover, Eastwood has filed crossclaims against the subcontractors seeking to cover any losses paid to the plaintiffs.  Consequently, the court finds that plaintiffs have adequately stated they seek significant relief from local defendants.

### c.  Significant Basis

Second, the court finds that plaintiffs have shown that Southcoast and Exterior Services's conduct form a significant basis for the relief sought.

Although the Fourth Circuit has not adopted a specific test regarding how to assess "significant basis," other jurisdictions have provided some guidance.  For example, the Third Circuit has held that the "significant basis" prong of the local controversy exception requires that there be "at least one local defendant whose alleged conduct forms a significant basis for all the claims asserted in the action."  Kaufman, 561 F.3d at 155; Walsh v. Defenders, Inc., 894 F.3d 583, 592–93 (3d Cir. 2018) (applying Kaufman); see also Est. of Hanna, 2015 WL 247906, *5 (considering the Third Circuit's guidance in Kaufman).  "In relating the local defendant's alleged conduct to all the claims asserted in

the action, the significant basis provision effectively calls for comparing the local defendant's alleged conduct to the alleged conduct of all the defendants." <u>Kaufman</u>, 561 F.3d at 156.  Thus, "the local defendant's alleged conduct must be an important ground for the asserted claims in view of the alleged conduct of all the Defendants." <u>Id.</u> at 157 (emphasis in original).  Some factors the Third Circuit provided to inform a court's comparison include: (1) the relative importance of each of the claims to the action; (2) the nature of the claims and issues raised against the local defendant; (3) the nature of the claims and issues raised against all defendants; (4) the number of claims that rely on the local defendant's alleged conduct; (5) the number of claims asserted; (6) the identity of the defendants; (7) whether the defendants are related; (8) the number of members of the putative classes asserting claims that rely on the local defendant's alleged conduct; and (9) the approximate number of members in the putative classes.  <u>Id.</u> at 157 n.13.  Finally, in determining whether there is a local defendant whose conduct forms a significant basis for the proposed plaintiff class's claims, a court may aggregate the local defendants to determine if there is a significant local basis for significant relief.  <u>See</u> <u>Alig</u>, 737 F.3d at 966.

There are several factors that weigh against finding a significant basis.  The mere existence of Alpha Omega as an alternative subcontractor undermines any argument that local defendants impacted <u>all</u> the claims in the class.[13]  In contrast, Eastwood, the general contractor, and Air Vent, the manufacturer of the allegedly defective ridge vent, could be

---

[13] This conclusion is impacted by Plaintiffs' assertion in their supplemental brief that they will amend the complaint to remove all class members whose homes were built by Alpha Omega.  ECF No. 36 at 7–8.  Again, the court emphasizes that it is considering the operative complaint at the time of removal.

liable to all 388 homes.  ECF No. 17 at 23–24.  Moreover, both Air Vent and Eastwood

are foreign citizens, which implicates interstate commerce more so than intrastate

commerce.  Id. at 25–26. The two local subcontractor defendants' actions cannot be a

basis for the three claims against Air Vent, who is a manufacturer.[14]  ECF No. 16 at 11.

Eastwood correctly notes that another court found no significant basis in part because the

complaint only named the local individual defendants in five counts but named some

iteration of the corporate defendants in all nine counts.  Id. at 13 (quoting Priselac, 561 F.

Supp. 3d at 576).  However, decisions from the Eastern District of North Carolina are not

binding on this court.  Moreover, that case is distinguishable because the two local

defendants in this case are corporations, not individuals.  See Priselac, 561 F. Supp. 3d at

576.

     Courts have not delineated a clear percentage as to what level of conduct rises to

"significant basis", but one court concluded that a defendant is "significant" if that

defendant's conduct impacts "all of the claims asserted in the action."  See Kaufman, 561

F.3d at 155.  "[T]he local defendant's alleged conduct must be an important ground for

the asserted claims in view of the alleged conduct of all the Defendants."  Id. at 157

(emphasis in original).  Courts have varied as to what percentage of claims affected by

the local defendant(s) rises to a significant basis.  See, e.g., Benko, 789 F.3d at 1119

(finding a significant basis when the local defendant impacted between fifteen to twenty

percent of the plaintiffs in the class); Allen v. Boeing Co., 821 F.3d 1111, 1116 n.3 (9th

Cir. 2016) (finding a significant basis when plaintiffs alleged local defendant was fifty

---

[14] However, Plaintiffs have dismissed all claims against Air Vent.  ECF No. 30.
The court is not considering that dismissal in this determination but noting that this is no
longer a concern.

percent responsible for the class claims); cf. Opelousas Gen. Hosp. Auth. v. FairPay

Sols., Inc., 655 F.3d 358, 362 n.5 (5th Cir. 2011) (finding no significant basis when the

local defendant's conduct impacted only 6.9 percent of the plaintiff class).  Plaintiffs

have specified that 375 members of the class, or ninety-six percent, would seek relief

from either Southcoast or Exterior Services.  ECF No. 35 at 7–8.  Thus, local defendants

are clearly an important ground for the asserted claims.

Other factors considered by the Third Circuit also weigh in favor of finding a

significant basis here.  See Kaufman, 561 F.3d at 157 n.13.  The nature of the action is

that of a "quintessential local controversy"—namely, defective construction of a local

subdivision of homes built in part by local subcontractors for local citizens in South

Carolina.  ECF No. 11-1 at 2.  Plaintiffs seek the same relief from Southcoast and

Exterior Services as from all the other Contractor Defendants.  Id. at 8.  Plaintiffs

emphasize that the claims against Southcoast and Exterior Services are not claims for

vicarious liability or some other form of secondary liability—rather, Southcoast and

Exterior Services are directly liable for the improper roofing work they performed.[15]  Id.

Moreover, Eastwood has filed crossclaims against its subcontractors, which appears to

indicate that Eastwood finds the work done by the subcontractors to be where the defects

originate.

---

[15] Plaintiffs do not directly make this argument, so the court is skeptical about
construing their argument as such, but some courts have found a defendant to be a
"primary defendant" if the plaintiff seeks to hold that defendant directly liable to the
proposed class, as opposed to being vicariously or secondarily liable based upon theories
of contribution or indemnification.  See, e.g., Copper Sands Homeowners Ass'n, Inc. v.
Copper Sands Realty, LLC, 2011 WL 941079, at *6 (D. Nev. Mar. 16, 2011); Anthony v.
Small Tube Mfg. Corp., 535 F. Supp. 2d 506, 517 (E.D. Pa. Sept. 27, 2007); Kitson v.
Bank of Edwardsville, 2006 WL 3392752, at *13–17 (S.D. Ill. Nov. 22, 2006);
Vodenichar v. Halcon Energy Props., Inc., 733 F.3d 497, 505 (3d Cir. 2013).

The court finds that local defendants Southcoast and Exterior Services are a significant basis for significant relief.  Thus, the second prong is met.

### 3.  Local Injuries

The parties do not dispute that this factor is met since all the alleged actions occurred to houses located in the State of South Carolina.  The injuries alleged are injuries to 388 homes located on real property in South Carolina and therefore all the injuries occurred within South Carolina.  ECF No. 11-1 at 8.  Air Vent and Eastwood do not contest this finding, and the court similarly finds that the third prong is easily met.

### 4.  Similar Class Actions

As a separate consideration from the three prongs of 28 U.S.C. § 1332(d)(4)(A)(i), the local controversy exception applies only if "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons."  28 U.S.C. § 1332(d)(4)(A)(ii).  This case was initially filed on August 26, 2020, therefore the applicable period for this inquiry would run from August 26, 2017 until the initial filing date.  See ECF No. 2 ¶ 2.

The court must determine "whether similar factual allegations have been made against the defendant in multiple class actions, regardless of whether the same causes of actions were asserted or whether the purported plaintiff classes were the same (or even overlapped in significant respects)."  S. Rep. No. 109-14, at 41 (2005); see Priselac, 561 F. Supp. 3d at 572; McAteer v. DCH Reg'l Med. Ctr., 2018 WL 1089873, at *6 (N.D. Ala. Feb. 26, 2018) ("CAFA does not require common questions o[f] law or fact . . . . [or] identical parties.").  The inquiry focuses on whether the class actions assert the same or

similar <u>factual</u> allegations, not whether they assert the same or similar causes of action.

<u>See</u> <u>Dutcher v. Matheson</u>, 840 F.3d 1183, 1191–92 (10th Cir. 2016) (finding that the two

actions at issue fundamentally rely on demonstrating the same facts); <u>McAteer</u>, 2018 WL

1089873, at *6 (finding that other plaintiffs asserted substantially similar factual

allegations against the same defendant notwithstanding that the conduct implicated

different plaintiff patients, different defendant hospitals, and involved different

contractual relationships with different healthcare insurers); <u>cf.</u> <u>Rasberry v. Capitol Cnty.</u>

<u>Mut. Fire Ins. Co.</u>, 609 F. Supp. 2d 594, 605 (E.D. Tex. 2009) (finding that even if the

cases arose from a common event, the factual basis giving rise to both actions differed

dramatically and the proof necessary to prevail in one class action different in all crucial

respects from the proof necessary to prevail in the other).

   In the instant case, the parties identify two class actions that might preclude

remand to state court.  The court examines each in turn.

### a. The <u>Russo</u> Class Action

   Plaintiffs argue that they are not aware of "any other class action which asserted

allegations related to defective construction on the roofing on these homes."  ECF No.

11-1 at 9.  Nevertheless, the court heard a similar matter on March 18, 2021.  <u>Russo</u>,

2020-CP-10-03794, 2021 WL 1059023 (Mar. 18, 2021).  This court dismissed <u>Russo</u>

under <u>Colorado River Water Conservation District</u>, 424 U.S. 800, citing the federal

court's right to abstain from matters duplicative of a state court proceeding—that state

court proceeding being <u>Smiley</u>, No. 2020-CP-10-03786 (Charleston Cnty. C.P. Aug. 26,

2020).  Plaintiffs in that class action filed <u>Russo</u> on August 27, 2020, which is one day

44

after the applicable three-year period considered for CAFA since plaintiffs in the instant case filed Smiley on August 26, 2020.  ECF No. 2 ¶ 2 n.1.

The instant case is Smiley removed from state court to federal court.  Plaintiffs acknowledge this similarity but rather argue that the dismissed case Russo is the same as Smiley, and thus "the purported duplicate is not an 'other class action' as contemplated by CAFA."  ECF No. 11-1 at 9.  Plaintiffs argue the only difference between the two cases is the addition of defendants, namely Air Vent, in the instant case via the third amended complaint which was allowed since Russo was dismissed and not remanded. Id. at 11–12.  Consequently, plaintiffs argue no other class actions have been filed based on these facts against these defendants in the last three years.  Air Vent disagrees with plaintiffs' description of the cases as identical and instead argues that Russo and Smiley were necessarily different cases where the plaintiffs "gamed the system by filing two separate cases" which is the type of "gamesmanship" that "CAFA was intended to prevent."  ECF No. 17 at 27–28.  As an example of such gamesmanship, Air Vent points to the fact that "[p]laintiffs went to great lengths to identify separate plaintiffs in Russo and Smiley to represent the class, even dividing spouses between the two pleadings."  Id. at 31.

The court can disregard whether Russo is duplicative by pointing to the staggered filing dates—Russo was filed August 27, 2020, whereas Smiley was filed August 26, 2020.  ECF No. 2 ¶ 2.  Again, CAFA provides that the local controversy exception applies only if "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons."  28 U.S.C. § 1332(d)(4)(A)(ii)

(emphasis added).  Consequently, the court does not have to determine whether <u>Russo</u> was duplicative of <u>Smiley</u> or its own separate action since <u>Russo</u> was filed <u>after</u> <u>Smiley</u>. However, even if the court were to consider the merits of Air Vent's arguments, the court finds that it is the same suit in a second iteration—not a separate, second-filed suit with similar factual allegations against some of the same defendants—which would not preclude remand under the local controversy exception.  <u>See Vodenichar v. Halcon Energy Props., Inc.</u>, 733 F.3d 497, 509 (3d Cir. 2013); <u>cf. Davenport v. Lockwood, Andrews & Newnam, Inc.</u>, 854 F.3d 905, 911 (6th Cir. 2017).

### b.  The <u>Clarke</u> Class Action

Air Vent and Eastwood also argue that even if <u>Russo</u> is not considered a separate case, there is a third lawsuit involving Eastwood Construction, Exterior Services, and Southcoast regarding two of the same subdivisions at issue in <u>Smiley</u>, which should render the local controversy exception inapplicable.  ECF No. 17 at 28–29; ECF No. 16 at 14–18; <u>Clarke v. Eastwood Constr.</u>, Civil Action No. 2019-CP-08-2423 (Berkeley Cnty. C.P. Oct. 2, 2019) ("<u>Clarke</u>").

The complaint alleged a class action representing "[a]ll present owners of houses located in the Retreat at Beresford of Charleston, South Carolina, which properties have had exterior decks, stairs, and railings installed by the Defendants in Berkeley County, South Carolina . . . . This class is limited to matters dealing with the decks, stairs, and railings on the houses."  <u>Clarke</u>, Compl. ¶ 1.  <u>Clarke</u> was settled on February 11, 2022.

Air Vent argues that <u>Clarke</u> and <u>Smiley</u> both claim that "the same 388 homes were damaged by water-intrusion because of a construction defect," concern the same five subdivisions, allege similar damages, and are brought against some of the same

defendants on behalf of identical plaintiffs.  ECF No. 17 at 30–34.  Eastwood emphasizes

these similarities, hitting on the fact that <u>Clarke</u> also alleged that Eastwood impliedly

provided certain warranties for the homes; alleged unfair and deceptive conduct by

Eastwood, Exterior Services, and Southcoast; and alleged failure to construct the

properties in accordance with the applicable building codes.  ECF No. 16 at 16.

Furthermore, as Eastwood notes, the <u>Clarke</u> action concerned only fifty-five homes that

make up part of the instant case, not the entire 388 identified in <u>Smiley</u>.  <u>Id.</u> at 17.  In

doing so, Eastwood argues that enabling multiple class actions to proceed against

Eastwood, Exterior Services, Southcoast, and Alpha Omega arising out of the

construction of homes in the subdivisions at issue forces them "to defend claims based on

similar facts, on multiple fronts."  ECF No. 16 at 18.  But, plaintiffs stress that <u>Clarke</u> and

<u>Smiley</u> are factually distinct because <u>Clarke</u> concerns the defective installation of exterior

decks, stairs, and railing, without any reference whatsoever to defective roofing, whereas

<u>Smiley</u> concerns defective roofing.  ECF No. 18 at 6.

To satisfy the element of no similar class actions in the preceding three years, the

complaints must contain similar, not identical, factual allegations.  <u>See</u> <u>Dernoshek v.

FirstService Residential, Inc.</u>, 2021 WL 1060208, at *4 (M.D.N.C. Mar. 19, 2021); S.

Rep. No. 109-14, at 41.  "Drawing the line between factual allegations that are similar

and those that are dissimilar is inherently imprecise."  <u>Rasberry</u>, 609 F. Supp. 2d at 605.

Alleging "the same acts of wrongdoing by the same defendant" suffices.  <u>Dutcher</u>, 840

F.3d at 1191; <u>see, e.g.</u>, <u>Davenport</u>, 854 F.3d at 909 (concluding that five class actions

arising from the Flint water crisis "advancing very similar factual allegations of

negligence, intentional and negligent infliction of emotional distress, and unjust enrichment" presented similar factual allegations).

"In contrast, a prior action lacks similar factual allegations where '[t]he proof necessary to prevail [in the prior action] differs in all crucial respects from the proof necessary to prevail [o]n behalf of the proposed class in this action.'" Priselac, 561 F. Supp. 3d at 572 (quoting Rasberry, 609 F. Supp. 2d at 605). Two actions arising from the same set of facts lack similar factual allegations where the principal objects of the suits are "factually and analytically distinct." Rasberry, 609 F. Supp. 2d at 605 (explaining that two actions stemming from Hurricane Rita lacked similar factual allegations because one action challenged the county's failure to pay contractor overhead and profit and sought monetary relief, while the other challenged the county's use of unlicensed adjusters and sought only declaratory and injunctive relief); see also Anderson v. Hackett, 646 F. Supp. 2d 1041, 1050–51 (S.D. Ill. 2009) (finding that two actions concerning the release of PCBs into the environment lacked similar factual allegations where the actions arose in different locales, and one action challenged the production and distribution of products containing PCBs, while the other challenged defendants' failure to discover and inform users of the dangers of PCBs); but see Priselac, 561 F. Supp. 3d at 573 (holding two actions contained similar allegations because both concerned defendants' release of toxic chemicals from the same work site, determined the harmful release was ongoing, and sought to conceal such actions from regulators under the same legal causes of action).

The court finds that Clarke is not a similar action that would preclude remand under the local controversy exception because the Clarke plaintiffs restricted the class "to

matters dealing with the decks, stairs, and railings on the houses." <u>Clarke</u>, Compl. ¶ 1. Based on caselaw, the fact that only fifty-five of the 388 houses included in the <u>Smiley</u> class qualified for the <u>Clarke</u> class does not disqualify <u>Clarke</u> as a "similar" class action. <u>See</u> <u>McAteer</u>, 2018 WL 1089873, at *6 (holding that two class actions were "similar" such that it failed to satisfy this prong even though the plaintiffs were different in each). Nor does the fact that Air Vent was not included as a defendant in <u>Clarke</u> disqualify it as a class action "similar" to <u>Smiley</u>. <u>See</u> <u>Priselac</u>, 561 F. Supp. 3d at 573 (finding that the local controversy exception requires no other class action to have been filed against <u>any</u> of the defendants, not <u>all</u> the defendants). What does, however, weigh in favor of finding the matter dissimilar is the fact that the evidence of negligence, breach of warranty, and violation of SCUTPA will necessarily come from an entirely different portion of the houses—the roofs—rather than the decks, stairs, and railings. <u>Cf.</u> <u>id.</u> (finding similarity between the instant case and a prior class action because the proof necessary to prevail largely overlapped). In its supplemental brief, Southcoast independently agrees with this interpretation and explains "the construction defects in [Clarke] centered around a completely different construction defect than the one present in the current action." ECF No. 33 at 8. Thus, the fourth prong is met and there are no other class actions asserting the same or similar allegations in the three years preceding this action.

Finding all four prongs met, the court is required to remand this action to state court under the local controversy exception. <u>See</u> 28 U.S.C. § 1332(d). Plaintiffs have adequately alleged that two-thirds of the class members are South Carolina citizens, Southcoast and Exterior Services are significant defendants, the injuries occurred in

South Carolina, and no other similar class action was filed in the three years preceding

<u>Smiley's</u> filing.

### IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to remand.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 7, 2023**
**Charleston, South Carolina**